UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

XAVIER COLLINS JOHNSON                                                    PETITIONER

V.                                                    CIVIL ACTION NO. 3:18-CV-392-KHJ-FKB

WARDEN TIMOTHY MORRIS                                                   RESPONDENT

ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is the Report and Recommendation ("Report") of United States Magistrate Judge F. Keith Ball. [25]. For the reasons stated, the Court adopts this Report's findings and the recommendation of the Magistrate to dismiss Petitioner Xavier Collins Johnson's Amended Petition for Writ of Habeas Corpus.

I.    Facts and Procedural History

    A.    Facts[1]

Bobby and Ann Hall, an elderly couple in their seventies, lived in Canton, Mississippi. *Johnson v. State*, 235 So. 3d 1404, 1407 (Miss. 2017). In late June 2014, Mr. Hall woke up early, turned on the coffee pot, and walked outside to retrieve his newspaper. *Id.* He remembers none of the events that happened after he walked outside. *Id.* Mrs. Hall woke up about 45 minutes later and, after seeing the newspaper still in the driveway, believed her husband was in the garden. *Id.* at 1407-08. After getting dressed, she went to the kitchen and picked up her purse. *Id.*

---

[1] The Court's statement of the facts derives from the record as determined by the Mississippi Supreme Court.

at 1408. Noticing it was lighter than usual, she became suspicious. *Id.* She walked outside and discovered Mr. Hall lying in the driveway with a bloody face and her credit cards scattered around the driveway. *Id.*

Paramedics airlifted Mr. Hall to the University of Mississippi Medical Center, where he was found to have a traumatic brain injury consistent with an assault. *Id.* He was in a coma for five weeks and was discharged home three months after the incident. *Id.* He can no longer drive and relies on a cane to walk. *Id.*

Mrs. Hall reported several fraudulent credit card charges to law enforcement officials, who eventually arrested Ashley Williams for the charges. *Id.* Williams first said that she found the credit card in a crack in her house, but she later admitted Petitioner Xavier Johnson gave it to her. *Id.* According to Williams, Johnson told her it was his girlfriend's card and requested Williams give him half of any cash she received from the card. *Id.*

Police arrested Johnson in August 2014. A grand jury indicted Johnson in May 2015 on charges of (1) burglary of a dwelling in violation of Miss. Code Ann. § 97-17-23, (2) aggravated assault in violation of Miss. Code Ann. § 97-3-7(2)(a)(i), and (3) conspiracy to commit credit-card fraud in violation of Miss. Code Ann. § 97-19-21. *Id.* The jury also charged Johnson as a habitual offender, subjecting him to enhanced punishments for his burglary and aggravated-assault charges. *Id.* Johnson waived arraignment, and the state court appointed counsel. *Id.*

After Johnson was indicted, his grandmother consented to a search of her house where Johnson resided. *Id.* Investigators found a pair of black Nike shoes. *Id.*

A test on these shoes discovered the presence of blood, which DNA analysis determined belonged to Mr. Hall. *Id.*

Johnson's trial began in November 2015. Mr. Hall testified that Johnson had visited his house on several occasions and that, the day before the attack, Mr. Hall had hired Johnson to wash and wax his RV. *Id.* Johnson planned to return the day of the assault to finish the job. *Id.*

Williams also testified at trial. *Id.* Along with her testimony about the credit card, she stated that Johnson borrowed her car the night before the attack and agreed to take her mother to work that morning at 6:00. *Id.* She stated he arrived "looking sweaty and nervous" and was "shaking his right hand." *Id.* He then asked her for baby wipes, which he used to clean blood off the knuckles on his right hand. *Id.* Williams noticed blood on Johnson's right sock and shoe. *Id.* Johnson disposed of his socks but put his shoes back on. *Id.* Williams said Johnson placed Mr. and Mrs. Hall's cell phones under her house, and when she questioned him about this, he responded, "I shouldn't have done it." *Id.* He then told her that, had Mrs. Hall woken up, he would have "shot her in the head." *Id.*

After closing arguments, Johnson requested the trial court give the jury a two-theory instruction, which the court denied. *Id.* The jury convicted Johnson on all three counts. The court sentenced Johnson to fifty years for the burglary count, forty years for the aggravated assault count, and five years for the conspiracy to commit credit-card fraud count, to run consecutively. *Id.*

B.     Procedural History

Johnson filed his original Petition for Writ of Habeas Corpus in June 2018. [1]. The Magistrate entered a Report and Recommendation finding the Petition to be a "mixed petition," containing both grounds exhausted at the state level and those that had not. [19] at 5. The Report recommended giving Johnson time to amend his petition and, if he failed to do so, dismissing the petition without prejudice. *Id.* at 7. The Court adopted this Report and gave Johnson 14 days to amend his petition. [20]. Johnson timely amended his Petition, re-urging the arguments from his original Petition but requesting that the Court omit his unexhausted argument (Ground Three). [21] at 2-3. These grounds are therefore before the Court:

1. Ground One: Whether the evidence was sufficient to support the breaking element of defendant's burglary conviction, in violation of his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, [2] at 1-3;

2. Ground Two: Whether the trial judge abused his discretion by failing to grant his requested two-theory jury instruction, in violation of his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, *id.* at 3-4;

3. Ground Four: Whether petitioner's speedy-trial rights were violated, pursuant to his due process rights as found in the Fifth and Fourteenth Amendments of the United States Constitution, *id.* at 10-11;

4.     Ground Five: Whether the indictment is void for failure to charge defendant with an essential element of the statute and/or crime, and whether the statutes are vague, ambiguous, or unconstitutional as applied, *Id.* at 12;

5.     Ground Six: Whether Petitioner was denied his due process right to an initial appearance according to Rule 6.03 of the Mississippi Uniform Rules of Circuit and County Court Practice, *id.*; and

6.     Ground Seven: Whether Petitioner was denied his due process right to an arraignment according to Rule 8.01 of the Mississippi Uniform Rules of Circuit and County Court Practice. *Id.*

In his Report, the Magistrate addressed each of these grounds in detail and found Johnson was not entitled to habeas relief. [25] at 6-16. After receiving multiple extensions, Johnson filed his Objections and disputes the Magistrate's findings. [30]. Respondent Warden Timothy Morris responded a week later. [31].

II.     Standard

The Court reviews de novo the portions of the Magistrate's Report to which Johnson objects, 28 U.S.C. § 636(b)(1), while the remaining portions are subject to a "clearly erroneous, abuse of discretion and contrary to law" standard of review. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The Court is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (citing *Nettles v. Wainwright*, 677 F.2d 404, 406-07 (5th Cir. Unit B 1982)). But the Court need not consider

"[f]rivolous, conclusive or general objections." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles*, 677 F.2d at 410 n.8). Johnson cannot "raise a factual objection by merely re-urging arguments contained in the original petition." *Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993) (citing *Smith v. Collins*, 964 F.2d 483, 485 (5th Cir. 1992)).

III. Analysis

Johnson objects to all the Magistrate's findings and requests an evidentiary hearing. He also maintains that any dismissal should be without prejudice. [30] at 1-8. The Court addresses each argument in turn.

A.  Dismissal with Prejudice

Johnson argues the Court should dismiss his Petition without prejudice because the Magistrate's previous Report recommended dismissal without prejudice if Johnson failed to amend his petition. [30] at 1. The Magistrate's previous Report, however, recommended dismissal on a procedural defect—the filing of a mixed petition—and such dismissal would not have been an adjudication on the merits. *Id.* at 5-7. The current Report recommends dismissal because Johnson's grounds fail on the merits. [25] at 6-17. Such a dismissal is an adjudication on the merits and should be with prejudice.

B.  Ground One

In his Objections to the Magistrate's findings on Ground One, Johnson merely re-urges the same arguments from his Amended Petition. [2] at 1-3; [21]. He maintains there is insufficient evidence to support his burglary charge because

there is no evidence establishing Mr. Hall closed the door on his way to collect the newspaper or that Johnson broke into the home. [30] at 1-2. Johnson contends the Magistrate's finding that Johnson removed "an obstacle—Mr. Hall—to gain entrance to the home" is not supported by the evidence because Mr. Hall cannot remember anything after walking outside. [30] at 2.

Johnson ignores the following evidence from which an inference can be drawn that Johnson attacked Mr. Hall to remove him as an obstacle to enter the house and that Johnson actually entered the house: Mr. Hall's bloody and unconscious body lying in the driveway, the credit cards from Mrs. Hall's purse in the kitchen found in the driveway, Williams' testimony that Johnson gave her Mrs. Hall's credit card, the blood Williams testified was on Johnson's hand, sock, and shoe the morning of the attack, and Mr. Hall's blood found on a shoe matching Williams' description and belonging to Johnson. *Johnson*, 235 So. 3d at 1408. This is sufficient evidence for a reasonable jury to find Johnson used force against Mr. Hall to gain entry to his house. The Court therefore adopts the Magistrate's findings on Ground One.

C. Ground Two

On Ground Two, the Magistrate noted that the Mississippi Supreme Court found that "Johnson failed to use the evidence to present a second competing theory. He merely maintained that he did not commit the crime." [25] at 10 (quoting *Johnson*, 235 So. 3d at 1413). The Magistrate found Johnson had no right to relief on this ground because he could not show the trial court's refusal to give a two-theory jury instruction "so infected the entire trial that the resulting conviction

7

violates due process." *Id.* at 10-11. The Report specifically points to Johnson's failure to advance a second, competing theory at trial and the Mississippi Supreme Court's recounting of the evidence establishing his guilt. *Id.*

The Court is unsure of what second theory Johnson alludes to in his Objections. He references blood found on his shoe not belonging to Mr. Hall and Williams' previous lies. [30] at 3. There is no indication that Johnson did not have a chance to cross-examine Williams on her previous statements, and DNA proved the blood on Johnson's shoe belonged to Mr. Hall. *Johnson*, 235 So. 3d at 1408. Without further argument about how the failure to give a two-theory jury instruction "so infected the entire trial that the resulting conviction violates due process," *Henderson v. Kibbe*, 431 U.S. 154-155 (1977) (citations omitted), the Court overrules Johnson's Objections and adopts the Magistrate's finding on Ground Two.

D.     Ground Four

Johnson objects to the Magistrate's findings on his speedy trial ground on the reasons for the delay, whether he asserted his right, and whether he was prejudiced. [30] at 5-6. The Supreme Court has identified four factors that govern the analysis of a potential violation of a defendant's right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of the right to a speedy trial, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530-533. The Magistrate found the Mississippi Supreme Court did not err in holding the State did not deliberately delay Johnson's trial. [25] at 13 (citing *Johnson*, 235 So. 3d at 1417). He found no evidence in the record that Johnson

asserted his right to a speedy trial. *Id.* And the Magistrate found there was no error in the Mississippi court's finding that the record was "void of any inference that evidence was lost, witnesses died or evidence went stale." *Id.* at 14 (citing *Johnson*, 235 So. 3d at 1418).

Johnson misunderstands the Magistrate's holding on the reasons for the delay. He insists the delay was the State's fault. [30] at 5. The Magistrate, however, found only that the delay was not *deliberate*, not that the State did not cause the delay. [25] at 13. He also noted the Mississippi Supreme Court found Johnson never objected to the continuance. *Id.* The Court adopts the Magistrate's finding that the state court's application of this *Barker* factor was not unreasonable. *Id.*

As to the assertion of his right, Johnson tries to introduce a document purporting to assert his right to a speedy trial dated January 1, 2015. [30-1] at 8. This document was not presented to the Magistrate, and there is nothing on the document that proves it was filed with the state court. This document is not included in the record nor does it bear any filing stamp. In any event, "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001) (citing *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992)). The Court therefore adopts the findings of the Magistrate on this factor.

Likewise, Johnson's first-time assertion of a lost witness caused by the trial delay is not before the Court. Johnson claims he was prejudiced because a witness in the chain-of-custody for the blood found on his shoes could not be located because

9

of the delay. [30] at 6. Johnson did not raise this before the Magistrate, so the Court will not consider it now. *See Finley*, 243 F.3d at 219 n.3 (citing *Armstrong*, 951 F.2d at 630). The Court adopts the Magistrate finding on this *Barker* factor.

Finding none of Johnson's Objections have merit, the Court adopts the Magistrate's finding on Ground Four of his Amended Petition.

E.   Ground Five

Ground Five in Johnson's Petition states only: "Whether the indictment is void due to failure to charge defendant with an essential element of the statue [sic] and/or crime, and whether the statues [sic] are vague, ambiguous or unconstitutional as applied : (Defendant "omitts" [sic] ground five argument.)" [2] at 12. The Magistrate found this "conclusory" allegation to be insufficient to warrant habeas relief. [25] at 15 (citing *Tugle v. Epps*, No. 4:13-cv-12-SA-DAS, 2013 WL 1891291, at *8 (N.D. Miss. May 6, 2013)). The Magistrate also noted that federal habeas relief is only available where "the indictment is so flawed that the trial court had no jurisdiction." *Id.* (citing *Evans v. Cain*, 577 F.3d 620, 625 (5th Cir. 2009)).

In his Objections, Johnson presents arguments not presented to the Magistrate in his original filings. [30] at 6-7. As stated above, "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Finley*, 243 F.3d at 219 n.3 (citing *Armstrong*, 951 F.2d at 630). Further, many of Johnson's arguments focus on the breaking element of his burglary charge and conspiracy to commit credit card fraud charge, arguing the evidence is not such that a grand jury could indict on this element. [30] at 7. This

type of sufficiency-of-the-evidence claim does not exist for grand jury proceedings. *See Costello v. United States*, 350 U.S. 359, 362 (1956) ("[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act.").

Reviewing the indictment, the Court agrees with the Magistrate's Report that "it referenced the appropriate statutes such that Johnson was given clear notice of the elements of the crimes and the charges levied against him." [25] at 15. The Court therefore adopts the findings of the Report on Ground Five.

F. Grounds Six and Seven

In Grounds Six and Seven of Johnson's Amended Petition, he argues that he was denied due process for his initial appearance and arraignment under the Mississippi Uniform Rules of Circuit and County Court Practice. [2] at 12; [21]. The Mississippi Supreme Court declined to review Johnson's argument as to his initial appearance because he failed to raise it at trial. *Johnson*, 235 So. 3d at 1415. It further found a similar bar to his arraignment argument but also held there was no plain error because the record showed that Johnson waived arraignment. *Id.* at 1416. As the Magistrate found, then, Johnson defaulted any federal claims for his initial appearance and arraignment "pursuant to an independent and adequate state procedural rule" because "Mississippi state courts consistently and regularly apply the bar imposed for failure to raise issues at trial, *i.e.*, the contemporaneous objection rule." [25] at 16 (citations omitted). In such cases, habeas relief is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a

11

result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Magistrate found, and the Court agrees, that Johnson "made no allegation or argument in his habeas petition that the procedural bars relied upon by the state court were inadequate to support the rejection of these claims" and has failure to show "actual prejudice as a result of the alleged constitutional violations, or that failure to address the merits of these claims will result in a miscarriage of justice." [25] at 16. Johnson argues in his Objections that applying the contemporaneous objection rule violated his federal rights because "at the trial court level[,] a defendant is mute to the lower court and is not allowed to speak to the court and such is actual prejudice as a result of the federal violation and is a miscarriage of justice." [30] at 8. Not only is this a conclusive objection the Court need not consider, but Johnson never raised it to the Magistrate for consideration and is therefore not properly before the Court. *See Battle*, 834 F.2d at 421 (quoting *Nettles*, 677 F.2d at 410 n.8) (holding that the Court need not consider "[f]rivolous, conclusive or general objections"); *Finley*, 243 F.3d at 219 n.3 (citing *Armstrong*, 951 F.2d at 630) ("[I]ssues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge.").

Johnson then deviates once more into a discussion about the delay of his trial and the blood found on his shoes at his grandmother's house. [30] at 8. These arguments do not show the state procedural bar requiring contemporaneous

12

objections violated Johnson's federal rights or led to a fundamental miscarriage of justice. And Johnson also failed to present these arguments to the Magistrate, meaning they are not properly before the Court. *Finley*, 243 F.3d at 219 n.3 (citing *Armstrong*, 951 F.2d at 630).

Finding the Magistrate correct that Grounds Six and Seven are procedurally barred, the Court adopts the findings of the Report and denies relief as to these grounds.

G. Evidentiary Hearing

Though Johnson generally states the Court should not dismiss his Petition "without the Petitioner being afforded a [sic] evidentiary hearing" because it "would be a grave miscarriage of justice," he offers no further arguments about why an evidentiary hearing is available in this case. [30] at 8. Under 28 U.S.C. § 2254(e), the Court may not hold an evidentiary hearing unless the record is not sufficiently developed in the state court proceedings and

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). None of Johnson's grounds for habeas relief rely on new rules of constitutional law or factual predicates not previously available. So the Court cannot hold an evidentiary hearing on any of his grounds. *Id.*

IV.   Conclusion

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Report and Recommendation [25] of United States Magistrate Judge F. Keith Ball, entered in this cause should be, and the same is, adopted as the findings of this Court.

IT IS, FURTHER, ORDERED AND ADJUDGED that the Amended Petition [21] is DENIED, and this case is DISMISSED WITH PREJUDICE.

A separate Final Judgment will issue this day.

SO ORDERED, this the 27th day of July, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
